of the act is impossible. If, then, the trustee's compensation is thus limited, how does this limitation affect the compensation of a receiver? May the court allow its receiver what it sees fit for his services in general, with an additional limited allowance for his particular services in conducting the bankrupt's business? This construction has some support in grammatical considerations, but in effect it nullifies the limitations imposed at the end of section 2. If the receiver's compensation be composed of two elements, one of which is not limited, it is clear that a limitation upon the other is ineffectual. Upon the whole, though with considerable doubt, I prefer to construe the limitation as imposed upon the receiver's total compensation for all his services of whatever sort. The amendment is intended to provide that receivers shall not be more highly paid than trustees. The receiver's maximum compensation, therefore, is that stated percentage upon disbursements which is fixed as the maximum compensation of the trustee. One apparent exception may be made to this rule: It is the ordinary duty of the trustee to reduce the estate to money. As applied to him, the word "disbursements" may be confined to payments in money. The receiver, on the other hand, is often required to keep and deliver up property in specie, and, as a basis for his compensation, the word "disbursements" may be construed so as to permit a compensation based upon the value of the property which he delivers. Thus construed, the act is made reasonable and harmonious. If some violence is done thereby to its grammatical construction, that is a result required by every construction proposed. I find nothing in this interpretation opposed to the decision of this court in In re Richards, 127 Fed. 772, and in that case attention is called to the fact that the allowances above mentioned are to be treated by the referees as maximum allowances, not to be given in every case.

The judgment of the referee is reversed, and the case is remitted to him, with instructions to proceed in accordance with this opinion.

---

In re HARK et al.

(District Court, E. D. Pennsylvania. April 14, 1905.)

No. 2,065.

BANKRUPTCY—PRODUCTION OF BOOKS OF ACCOUNT—CLAIM OF PRIVILEGE.

A bankrupt who pleads his constitutional privilege as a reason for not producing his books of account, claiming that they contain evidence which may incriminate him, must bring such books before the court or referee for the determination of the question whether his plea is well founded on fact, and that the books may be used for such necessary and proper purposes as are not inconsistent with the protection of his rights.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1066, 1067.]

In Bankruptcy. On certificate from referee.

Harry S. Mesirov, for petitioners.

Henry N. Wessel, for Harry Hark, alleged bankrupt.

HOLLAND, District Judge. Harry A. Hark, one of the partners of the firm of Hark Bros., bankrupts, was subpœnaed and appeared before the special referee. The referee, at a meeting held on November 14, 1904, made the following order:

"After hearing testimony on November 10 and November 14, 1904, and upon motion of Harry S. Mesirov, Esq., attorney for the receiver and petitioning creditor, the referee orders and directs Harry A. Hark, one of the bankrupts, to produce all of the books and records of the business of Hark Bros., bankrupts, referred to by him in his testimony of November 10 and November 14, 1904, at an adjourned meeting to be held before the referee at 2:30 p. m. on November 14, 1904."

Harry A. Hark appeared at this adjourned meeting, but refused to produce his books and papers, and subsequently filed an answer, and then a supplemental answer, in the latter of which he says:

"If I am obliged to turn the said books over to the receiver, I will thus be obliged to furnish evidence which will put me in jeopardy of my liberty, and might lead a jury to convict me of crime."

The referee reports that there is no evidence before him to show that there is anything contained in the books tending to incriminate the bankrupts, and further calls attention to the fact that his order of November 14, 1904, was not an order to turn the books over to the receiver, but simply to produce them before the referee. This court decided (In re Hess, 134 Fed. 109) that:

"Where a bankrupt pleads his constitutional privilege against a production of books of accounts alleged to contain incriminating evidence, he should be required to bring such books and papers either before the court or referee in bankruptcy for determination of the question whether the plea is well founded in fact, and for the making of an order for the protection of the bankrupt from the discovery of such evidence, and, if possible, to enable the trustee to obtain other necessary information from such books."

There is nothing in the evidence produced before the referee to show that these books contain incriminating evidence, other than the allegation of the bankrupts in their answer. The order to produce them before him should have been complied with, and then the question as to whether this plea of the bankrupts is well founded could be determined by the referee.

As to the question of allowing the bankrupts to be represented by counsel, the referee reports that this privilege was not refused them at the hearing, and it is to be assumed that the referee will allow them to be represented by their counsel at any further hearing that may take place.

The bankrupts complain that they were not permitted to correct some erroneous statements made by them, although an examination of the record shows that corrections were allowed. A witness should always be permitted to make a correction in any statement theretofore made, and the reason for the correction, of course, can be taken into consideration by the referee in passing upon the credibility of the witness.

It is therefore ordered, adjudged, and decreed that the matter be referred back to the referee, David W. Amram, Esq., and that the said Harry A. Hark be, and is hereby, directed to comply with

the referee's order of November 14, 1904, to wit, to produce before him, the said David W. Amram, referee, all of the books and records of the business of Hark Bros., bankrupts, referred to by him, the said Harry A. Hark, in his testimony of November 10 and November 14, 1904; the said books and records to be produced at a meeting to be fixed by the said David W. Amram, referee, and notice to be served upon the said Harry A. Hark.

In re EDWARD HESS & CO.

(District Court, E. D. Pennsylvania. April 14, 1905.)

No. 1,993.

BANKRUPTCY—CLAIM OF PRIVILEGE—PRODUCTION OF BOOKS OF ACCOUNT.
    The finding of a referee that there was no foundation in fact for the claim of privilege set up by a bankrupt on the ground that his books and papers, if produced, would tend to incriminate him, affirmed, and an order made requiring him to produce his books and to answer certain questions propounded to him; the only witnesses called, aside from the bankrupt, having testified that an examination of the books disclosed nothing of an incriminating character, and that they were properly kept.

In Bankruptcy. On certificate from referee.

Charles Biddle, Samuel P. Tull, and Edgar C. Van Dyke, for trustee.

Julius C. Levi, for bankrupt.

HOLLAND, District Judge. Some time ago a reference was made in this case "to take such testimony as the bankrupt might offer to show his answer that his books and papers contain evidence which may tend to incriminate him is made in good faith, to protect him against a criminal prosecution that has been instituted or which may be brought against him, and report such evidence and his conclusions thereon to this court, specifying which of the said documents, if any, did or did not contain such alleged incriminating evidence." (D. C.) 134 Fed. 109. The bankrupt and two witnesses appeared before the referee. Certain questions were propounded to the witnesses, who were unable to answer without the books and papers belonging to the bankrupt from which the data could be obtained to enable them to correctly answer the questions. The bankrupt refused to produce his books or papers referred to by these witnesses, and refused to answer certain questions. The referee directed him to produce the books and papers and to answer the questions. Whereupon counsel for the bankrupt requested the referee to certify the question to this court as to whether the bankrupt should be compelled to answer the questions and to produce the books and papers.

The two witnesses called testified that an examination of the books shows nothing in them tending to incriminate the bankrupt and that the books were properly and correctly kept. The referee, in an opinion filed, concludes that there is nothing in the answer to