<hr />

## In re HARRIS.

(District Court, S. D. New York. August 28, 1908.)

BANKRUPTCY—DELIVERY OF BOOKS TO TRUSTEE—CLAIM OF PRIVILEGE.

A bankrupt is not permitted to withhold his books from his trustee or receiver on his mere assertion that they contain evidence which would tend to incriminate him; but he must produce them, that the question may be determined by the court or referee, and that, if it appears that they do contain such evidence, the court may make such order as will protect the bankrupt from its use in any criminal case, and at the same time give the trustee the use of the books in the administration of the estate.

In Bankruptcy. On motion to require bankrupt to deliver his books to the receiver.

James, Schell & Elkus (Abram I. Elkus and Robert P. Levis, of counsel), for receiver.

Fischer & Rosenbaum (Louis J. Vorhaus and Joseph Fischer, of counsel), for alleged bankrupt.

HOLT, District Judge. This is a motion that the bankrupt deliver his books of account to the receiver. The bankrupt declines to do so on the ground that the books contain entries which would incriminate him. It appears from the moving papers that the bankrupt made a statement to a mercantile agency, that his books contain entries which show that the statement to the agency was incorrect, and that some of the bankrupt's creditors have threatened to prosecute him criminally.

The question involved in this motion is important. On the one hand, the law is well settled that the constitutional provision that no man shall be compelled to be a witness against himself enables a person, under ordinary circumstances, to refuse, not only to give oral testimony, but to produce his books and papers, on the ground that they would tend to incriminate him (Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746), and it has been held that a bankrupt, as well as any other person, is entitled to the protection of such constitutional provision (In re Kanter & Cohen [D. C.] 9 Am. Bankr. Rep. 104, 117 Fed. 356). In Boyd v. U. S., the defendant's books were subpœnaed to be used against him on a trial in an action brought by the government to recover penalties for smuggling. In the Kanter & Cohen Case the bankrupts had been actually indicted, and it was the obvious purpose of the proceedings for the production of the books to obtain proof of the defendants' guilt on the trial of the indictment. But in the case at bar no criminal prosecution has been brought, and the only purpose for which the receiver wants the books is to administer the estate.

A rule under which a bankrupt may, in any case, at his own option, refuse to produce his books, may in many instances almost paralyze the power of the court to administer the estate. No business of any considerable magnitude can be or is carried on without keeping books of account; and when such a business becomes bankrupt it is practically almost impossible for a receiver or trustee to properly discharge his duties without having possession of the books of the business. In view of this necessity in bankruptcy cases, it has been held that a bankrupt is not permitted to withhold his books from his trustee on his mere assertion that they tend to incriminate him, but must produce them before the court or referee in bankruptcy, in order to have the question determined whether they do, in fact, tend to incriminate him, and that, if it appears that they do contain incriminating evidence, the court can make such an order as will protect the bankrupt from the use of such evidence for any criminal proceeding, and at the same time will enable the trustee to make such use of the books as may be necessary to administer the estate. In re Hess (D. C.) 14 Am. Bankr.

Rep. 559, 134 Fed. 109; In re Hark Bros. (D. C.) 14 Am. Bankr. Rep. 624, 136 Fed. 986.

While the practical difficulty of absolutely protecting a bankrupt in such a case must be admitted, the necessity, on the other hand, of giving the officer who administers a bankrupt estate access to the books is so imperative that, in my opinion, the practice suggested in the cases cited should be followed. The bankrupt's counsel, in whose possession the books are, asserts that he has heretofore permitted the receiver to examine the books, and that he is willing that he shall continue to do so, provided he is assured that no use will be made of any information contained in them in aid of any criminal prosecution. I do not see any essential difference between an arrangement by which the receiver is permitted to consult the books in the possession of the bankrupt's attorneys, and one by which the receiver shall be permitted to take the books into his own possession, provided that proper guarantees are made against the use of the books in aid of a criminal prosecution.

An order may be entered directing that the attorney for the bankrupt deliver the books to the receiver, who is to receive them as the agent of the bankrupt, and is to use them or permit their use by any other person only for the purpose of the civil administration of the estate in bankruptcy. The order may contain a provision that, in case any subpœna or other process is issued for the purpose of obtaining possession of the books in the receiver's custody, it shall be the duty of the receiver to notify the bankrupt, and not to part with the books until the bankrupt has had an opportunity to raise the question of his constitutional privilege in the same manner as though his books had remained in his own possession.

The order should be settled on notice, and if any additional provisions for the protection of the bankrupt are desired they may be suggested when the order is submitted.