## In re TRACY & CO.

### Ex parte TRACY.

(District Court, S. D. New York. February 28, 1910.)

1. COURTS (§ 376*)—UNITED STATES COURTS—STATE LAWS.

On an application to a court of bankruptcy for an injunction and order to prevent a county district attorney from using, and a trustee in bankruptcy from permitting the use, of books of the bankrupt in criminal proceedings, no question arises involving the Constitution of the state; the jurisdiction of the court depending on the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) and the Constitution of the United States.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 376.*]

2. CONSTITUTIONAL LAW (§§ 206, 255*)—PRIVILEGE OF WITNESS—EXAMINATION.

The provisions of the New York state Constitution in regard to self-incrimination by witnesses do not raise any question under Const. U. S. Amend. 14.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. §§ 206, 255.*]

3. BANKRUPTCY (§ 238*)—EXAMINATION—PRIVILEGE—WAIVER.

Where a bankrupt, on the commencement of the bankruptcy proceedings, surrenders his books to the receiver without raising the question of privilege as to their use against him, so far as it is a proper use of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

books by the trustee in bankruptcy to allow prosecuting authorities to use them, the bankrupt is chargeable with knowledge of that right, and his surrender of the books waives his privilege.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 238.*]

**4.** BANKRUPTCY (§ 242*)—POWERS AND DUTIES OF TRUSTEE—USE OF BOOKS OF BANKRUPT.

Where a bankrupt surrenders his books to a receiver appointed at the commencement of the bankruptcy proceedings, who transfers them to the trustee in bankruptcy, it is proper for the trustee to permit their use by state prosecuting authorities against the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 242.*]

**5.** BANKRUPTCY (§ 242*)—USE OF BANKRUPT'S BOOKS—STATUTORY PROVISIONS.

Bankr. Act July 1, 1898, c. 541, § 7, subd. 9, 30 Stat. 548 (U. S. Comp. St. 1901. p. 3425), requiring the bankrupt to submit to an examination, but providing that no testimony given by him shall be offered in evidence against him in any criminal proceeding, so far as it affects the right of the trustee to permit the use of books of the bankrupt by state prosecuting authorities, at most raises a question of competency of the evidence in the state court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 242.*]

In the matter of the bankruptcy of Tracy & Co. Application by William W. Tracy for injunction and order to the district attorney of New York county and the trustee in bankruptcy. Denied.

This is an application made to the bankruptcy court for an order enjoining the district attorney of New York county and his assistants from offering in evidence any books of the petitioner, an adjudicated bankrupt, before the grand jury or in any criminal cause, or from taking copies from such books, or from retaining possession of such books, directing them to turn the same back to the trustee in bankruptcy, directing the trustee to take possession of the books, and not to deliver them to the district attorney, enjoining him from permitting them to inspect, or take copies from the same. A petition in bankruptcy was filed on May 17, 1909, against three copartners, of whom the petitioner was one. On the same day a receiver was appointed without their consent, who at once took possession of all the books and papers of the petitioner, and, although the petitioner alleges this also was without his consent, he did not at the time raise any question of his constitutional privilege against self-incrimination, or attempt to assert his right to possession of the books. Subsequently the receiver was appointed trustee after adjudication, and delivered the books to public accountants. The respondent Kindleberger, an assistant district attorney for the county of New York, was put in charge of criminal prosecutions against the petitioner and his partners. By a subpœna duces tecum, issued against the accountants and with the connivance and consent of the trustee, he obtained possession of the books and at the time of this application was proposing to use them as evidence before the grand jury of the county of New York. The petitioner raises what he claims to be his constitutional privilege to prevent the use of the books and to prevent the district attorney from making or using any copies of the books which he may obtain from their possession.

Howard S. Gans and Joseph O. Morris, for petitioner.

Charles S. Whitman, Dist. Atty., and Robert C. Taylor, Asst. Dist. Atty., opposed.

HAND, District Judge (after stating the facts as above). It is first apparent that no question involving the Constitution of the state of New York exists in the case. Such jurisdiction as I may have depends upon the bankruptcy act and the Constitution of the United States,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and as such the Constitution of the state of New York cannot be involved. In this connection it is also apparent that, since Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97, the provisions of the New York state Constitution in regard to self-incrimination do not raise any question under the fourteenth amendment.

There is, however, a question, under the fourth and fifth amendments of the United States Constitution, as to whether the provisions of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) are in conflict with those amendments. Had the petitioner, for example, resisted the receiver and been compelled by an order of contempt to turn over his books, it might well be that he would retain a privilege. Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. I do not even say that the mere claim of privilege would not be enough to preserve his rights, or that he was obliged to wait for the receiver actually to obtain an order of contempt against him. It is not necessary to decide how far he must protest in order to preserve his rights.

In that case the question would have arisen as to whether the bankruptcy act—section 70 (1) and section 2 (3)—is in violation of the fourth or fifth amendments. Section 7 (9), even if the word "testimony" covers books and papers seized, is not sufficiently broad to provide the constitutional protection to a bankrupt, and it has been held in a number of cases that a bankrupt may resist the delivery of his books, if he claims they are incriminatory. Re Hess (D. C.) 134 Fed. 109; Re Kanter (D. C.) 117 Fed. 356; Re Harris (D. C.) 164 Fed. 292; Re Hark (D. C.) 136 Fed. 986. It is not necessary to consider the rule laid down in Re Harris, supra, because that, as well as the other cases cited, all arose when the bankrupt made timely protest against the surrender of his books.

The first question which arises is therefore whether the petitioner's rights survived the surrender of the books without claim of the undoubted privilege which up till then he may have had. That the evidence, whether oral or documentary, is admissible is quite clear. Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; Kerrch v. United States, 171 Fed. 366, 96 C. C. A. 258. Moreover, if freely given once, it may, of course, be used thereafter. Tucker v. United States, 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112. For the privilege is purely personal, and may be waived. Brown v. Walker, 161 U. S. 591, 597, 16 Sup. Ct. 644, 40 L. Ed. 819. The delivery might have been conditional; but it was not. Was not surrender of possession a waiver? Neither party has cited any case very nearly in point; but I think there is not great difficulty. It is well settled that to testify without raising the point is a waiver; nor would any one deny that to produce the document for what one knew to be a judicial proceeding would be enough as well. The receiver was a judicial officer, whose duties in fact involved an inquisition in the affairs of the then alleged bankrupts. The question is whether they were not sufficiently advised of the use to which the books were to be put. If, as I shall try to show, it was a proper use of them by the trustee to allow the prosecuting authorities to use them, the petitioner was chargeable with knowledge of that right. His surrender necessarily involved a recogni-

tion of the possibilities of all legitimate uses to which they could be put when once he parted with them. If there were any such that he thought damaging to his interests, then was the time to assert his privilege of protection.

The only remaining question is as to whether the use of the books by the trustee was improper, and whether the bankrupt's eventual rights in them were infringed. The petitioner insists that the trustee's duties are confined to the administration of the estate, and it is no part of those duties to assist in the prosecution of the bankrupt. I do not mean to say that the trustee has any such duties, or that he is delinquent when he does not aid a prosecution. It is one thing, however, to say that he has no such positive duties, and another to say that it is an abuse of his powers so to assist. If the trustee proposed to show the books to trade rivals of the bankrupts, so as to prejudice them in re-establishing themselves in business, it would clearly be a wanton and illegal misuse of power. However, the trustee is an officer of this court, and this court cannot remain impartial, a disinterested spectator, when the issue is of the detection and prosecution of crime. It cannot, and, of course, it does not, assume that this petitioner, or any one else, is guilty of any crime; but when the responsible authorities of a state institute lawful proceedings to inquire into acts which may be criminal, in due course of law, that is a public purpose to which no court can remain indifferent, whether the prosecution be before the tribunals of the United States or of the state of New York. Any documents which are in our possession, and to show which is not illegal, will, I hope, always be open to the inspection of any public officer charged with the prosecution of crime. So long as the petitioner retained his constitutional privilege, he might decline to assist any prosecution against himself, or he might surrender to this court his books only on condition; but, when he waives it, he must waive it for all those purposes for which courts exist, and I cannot limit them, so as to exclude the proposed use here. He must be, therefore, charged with knowledge that the court recognizes a public propriety, incident to the purposes of its own existence, in the use of all documents to ascertain the truth as to the violation of law.

It may be asked whether the same rule would apply if the trustee proposed to use the books in aid of the prosecution of a claim not provable in bankruptcy. Perhaps it could not, because in civil matters our law has in many ways remained inert towards assisting in the disclosure of facts. But in any case the instance is not parallel. There is a public interest in the investigation of the violation of the laws, which does not exist in the case of merely civil controversies. It is true that in Blum v. State, 94 Md. 375, 51 Atl. 26, 56 L. R. A. 322, the Court of Appeals of Maryland reversed a conviction for the admission of books taken by a receiver; but that decision is certainly not the law of the federal courts, after Adams v. New York, supra, which holds that the competency of the testimony does not depend upon the mode of its acquisition. That case was followed by the Cook county criminal court in People v. Swarts, 8 Am. Bankr. Rep. 487. However, in State v. Strait, 94 Minn. 384, 102 N. W. 913, the Supreme Court of Minnesota declined to quash an indictment when the trustee had

gone before the grand jury. It is true in this case, also, that the evidence was good, whoever presented it; but, dictum for dictum, the case at least meets Blum v. State. Nor, in view of the surrender of the books in this case without protest, does it matter that in that case the bankruptcy proceeding was voluntary, while here it was not.

So far as section 7 (9) of the act goes, it raises a question at most of the competency of the testimony in the state courts (Burrell v. Montana, 194 U. S. 572, 24 Sup. Ct. 787, 48 L. Ed. 1122), and it does not arise in this proceeding. I cannot decide what is competent proof for conviction in New York, nor need I say that I will restrain a trustee from offering books to the district attorney of New York county because they may prove to contain only incompetent testimony. The courts of New York are as much bound by the laws and Constitution of the United States as I, nor may I suppose them less willing or able to construe or enforce them.

This disposes of all the petitioner's contentions, but that based on Potter v. Beal, 50 Fed. 860, 2 C. C. A. 60. That case arose on what was construed to be a final decree upon a bill in equity asking the delivery to the complainant of his trunk full of documents taken by the receiver of a bank. Two points were decided: First, that because he suspected the trunk to contain incriminatory documents, the district attorney could not intervene; second, that there could not be a distribution of documents, constituting final decree, without any evidence at all. The language of the opinion is no broader, though in the analogies Judge Putnam uses he refers to the practice upon production of documents in equity by motion. The case has no bearing whatever in this case, because it was in a suit to recover the papers from the receiver, which this petitioner does not even ask, and because to all the papers the receiver had prima facie no right, as they had all been taken from complainant's possession. I must say that I cannot see the least bearing of all this upon the case at bar.

Petition denied.