## UNITED STATES v. GILL.
### No. 6164.

District Court, D. New Mexico.

Dec. 28, 1931.

Hugh B. Woodward, U. S. Atty., of Albuquerque, N. M.

George R. Craig, Harry A. Wilson, and Claud S. Mann, all of Albuquerque, N. M., for defendant.

PHILLIPS, Circuit Judge.

On April 10, 1931, defendant was arrested on a charge of violating the National Motor Vehicle Theft Act (18 USCA § 408). The following day he was arraigned before a United States Commissioner, entered a plea of guilty, and was bound over to await the action of the grand jury. Being unable to make bond, he was confined in the Bernalillo County jail at Albuquerque, New Mexico. On June 16, 1931, he filed a motion herein in which he set up the foregoing facts and prayed that the court authorize the filing of an information charging him with the violation of such act, and permit him to enter a plea of guilty thereto. This motion stated that defendant had been fully advised of his legal rights.

I entered an order authorizing the filing of the information. Thereupon the United States Attorney filed an information which properly charged the offense, and set up the motion and order of the court. Attached thereto was a written waiver of indictment and consent to the filing of such information duly signed by defendant. Defendant appeared in open court, and personally and by his counsel expressly waived indictment by a grand jury, and asked the court to accept his plea of guilty to the information. After satisfying myself that defendant had been fully advised as to his rights by competent counsel and had consented to the filing of such information, I directed the plea to be entered, and sentenced defendant to serve a term of three years in an appropriate penal institution, suspended the execution of such sentence, and placed defendant on probation.

On June 18, 1931, at my request defendant filed herein his motion to vacate and set aside such sentence.

Two questions are presented:

First. May a defendant waive the provision of the Fifth Amendment that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," and consent to be charged by information for an offense above the grade of misdemeanor?

Second. Assuming that such provision of the Fifth Amendment creates a personal right or privilege which may be waived, has the United States Attorney authority to charge a person with the commission of a felony by an information?

I. May an accused waive indictment for a capital or otherwise infamous crime? All

of the provisions of the Constitution for the protection of persons accused of crimes, except the above quoted provision of the Fifth Amendment, have been held personal rights or privileges which may be waived.

The provision against self-incrimination, "Nor shall be compelled in any Criminal Case to be a witness against himself" (Amendment 5), is a personal privilege which may be waived. Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448; Reagan v. United States, 157 U. S. 301, 15 S. Ct. 610, 39 L. Ed. 709; Ex parte Tracy (D. C. N. Y.) 177 F. 532; Levin v. United States (C. C. A. 9) 5 F.(2d) 598; Thompson v. United States (C. C. A. 7) 10 F.(2d) 781; Optner v. United States (C. C. A. 6) 13 F.(2d) 11; Diggs v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. Ed. 819; United States v. Commissioner of Immigration, 273 U. S. 103, 47 S. Ct. 302, 71 L. Ed. 560.

The provision for a speedy trial, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial" (Amendment 6), is a personal right which may be waived. Daniels v. United States (C. C. A. 9) 17 F.(2d) 339; Phillips v. United States (C. C. A. 8) 201 F. 259; Worthington v. United States (C. C. A. 7) 1 F.(2d) 154.

The right of an accused to be confronted with witnesses, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him" (Amendment 6), is a personal right which may be waived. Diaz v. United States, 223 U. S. 442, 32 S. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; Grove v. United States (C. C. A. 4) 3 F.(2d) 965; Fukunaga v. Territory of Hawaii (C. C. A. 9) 33 F.(2d) 396.

The provision against double jeopardy, "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb" (Amendment 5), is a personal privilege which may be waived. Brady v. United States (C. C. A. 8) 24 F.(2d) 399; Levin v. United States, supra; Trono v. United States, 199 U. S. 521, 26 S. Ct. 121, 50 L. Ed. 292, 4 Ann. Cas. 773.

The provision relating to unreasonable searches and seizures, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" (Amendment 4), is a personal right which may be waived. Waxman v. United States (C. C. A. 9) 12 F.(2d) 775; Giacolone v. United States (C. C. A. 9) 13 F.(2d) 110; Cantrell v. United States (C. C. A. 5) 15 F.(2d) 953; Windsor v. United States (C. C. A. 6) 286 F. 51; Poetter v. United States (C. C. A. 9) 31 F.(2d) 438.

The right to be represented by counsel, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence" (Amendment 6), is a personal right which may be waived. Schick v. United States, 195 U. S. 65, 72, 24 S. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585; Patton v. United States, 281 U. S. 276, 310, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263.

The right to trial by jury in criminal cases, "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury" (article 3, § 2), and, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury" (Amendment 6), is a personal right or privilege which may be waived. Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263.

Stephen in his "History of the Criminal Law of England," vol. I, p. 244, says: "Since the Norman Conquest there have been three modes of trial in criminal cases, namely, trial by ordeal, trial by battle, and trial by jury; and there have been also three modes of accusation, namely, appeal or accusation by a private person, indictment or accusation by a grand jury, and informations which are accusations either by the Attorney-General or by the Master of the Crown Office."

The grand jury is an ancient institution of the common law. Bl. Com., Book IV, p. 302; Charge to Grand Jury, 2 Sawy. 667, Fed. Cas. No. 18,255.

Blackstone, in Book IV, p. 309, says: "This mode of prosecution by information filed on record by the king's attorney-general, or by his coroner or master of the crown office in the court of the king's bench, is as ancient as the common law itself." See also "History of the Criminal Law of England" (Stephen) vol. I, pp. 294, 297.

At common law prosecution by information was limited to misdemeanors. Bl. Com., Book IV, p. 310; 31 C. J. § 11, p. 564; Joyce on Indictments (2d Ed.) § 7; United States v. Shepard, Fed. Cas. No. 16,273; Weeks v. United States (C. C. A. 2) 216 F. 292, 295, L. R. A. 1915B, 651, Ann. Cas. 1917C, 524.

The authorities are not in accord on the question of whether an accused may waive indictment where the offense charged is above the grade of misdemeanor.

In Ex parte Bain, 121 U. S. 1, 7 S. Ct. 781, 787, 30 L. Ed. 849, the court was called upon to determine whether an indictment, after it had been returned and filed with the court, could be amended by an order of the court. In holding that such amendment could not be made, the court said: "We are of the opinion that an indictment found by a grand jury was indispensable to the power of the court to try the petitioner for the crime with which he was charged."

In Ex parte McClusky (C. C. Ark.) 40 F. 71, 74, the court said that the provision of the Fifth Amendment that "'no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury,' provides for a requisite to jurisdiction," and that "a party cannot waive a constitutional right when its effect is to give a court jurisdiction."

In Cancemi v. People, 18 N. Y. 128, the court held that a defendant could not waive the right of trial by jury in a capital case.

In Low v. United States (C. C. A. 6) 169 F. 86, 92, the court held that neither the accused nor the United States Attorney could waive trial of a crime by jury. It said: "The jurisdiction of the court to pronounce a judgment or conviction for crime, when there has been a plea of not guilty, rests upon the foundation of a verdict by a jury."

In Dickinson v. United States (C. C. A. 1) 159 F. 801, the court held that a person accused of an infamous crime could not waive his right to be tried by a jury of twelve persons and consent to be tried by, and abide the verdict of a jury of ten persons.

In People ex rel. Battista v. Christian, 249 N. Y. 314, 164 N. E. 111, 61 A. L. R. 793, the court held that the constitutional requirement that "No person shall be held to answer for a capital or otherwise infamous crime * * * unless on presentment or indictment of a grand jury" is jurisdictional and cannot be waived.

In the case of Edwards v. State, 45 N. J. Law, 419, the court had under consideration whether an accused could waive indictment and trial by jury pursuant to an act of the New Jersey legislature entitled, "An act to facilitate judicial proceedings in the county of Essex," Pamphlet Laws 1867, p.

463. Paragraph 9, art. 1, of the New Jersey Constitution, provides that, "No person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or navy, or in the militia when in actual service in time of war or public danger."

After holding that trial by jury could be waived, the court said: "But it is insisted that if the accused may waive his right to a trial by jury, he cannot, by his consent, dispense with a presentment or indictment by a grand jury. The argument is based on the difference in the language of the two constitutional provisions. It is true that the language in the provision securing trial by jury is expressive of an intention to confer a right, and the language in the other provision, with respect to a presentment or indictment, is prohibitory in the form of expression. But, nevertheless, both these provisions are classified under the title of 'Rights and Privileges,' and among the rights and privileges enumerated in the constitution. The form of expression in which the constitutional guaranty of the rights and privileges to which these two paragraphs relate are declared, does not alter or affect the nature of either. The legislature is just as effectually restrained from enforcing, against a non-consenting person, a trial without a jury, as it is from coercing him to answer for the criminal offence imputed to him without a presentment or indictment; and exemption from prosecution without a presentment or indictment is essentially a personal right of the same nature and quality as exemption from trial and conviction except upon the verdict of a jury. Both these provisions were designed for the security of the personal rights of the individual by exempting him, as a person, from conviction upon a criminal accusation otherwise than is declared in the constitution, and the framers of that instrument aptly placed both under the class of 'Rights and Privileges.' We can see no force in the argument that the accused may waive a trial by a jury and not waive the other constitutional privilege of having the accusation against him first passed upon and found by a grand jury. If his waiver is effective in the one instance, it must be in the other. Both provisions are provisions made for the benefit of the accused, and both are subject to that fundamental rule of law that a person may renounce a provision made for his benefit, and to that maxim quilibet potest renunciare juri

pro se introducto, which applies as well to constitutional law as to any other. Baker v. Braman, 6 Hill [N. Y.] 47 [40 Am. Dec. 387]; United States v. Rathbone, 2 Paine 578 [Fed. Cas. No. 16,121]." See also Commonwealth ex rel. Stanton v. Francies, 250 Pa. 496, 95 A. 527.

In Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 261, 74 L. Ed. 854, 70 A. L. R. 263, the court rejected the doctrine of Cancemi v. People, 18 N. Y. 128; Low v. United States (C. C. A.) 169 F. 86, and Dickinson v. United States (C. C. A.) 159 F. 801, and held that the provisions of the Constitution relating to trial by jury are not jurisdictional, but confer a right or privilege upon the accused which he may forego at his election. The court in the opinion, in part said:

"It may be conceded, at least generally, that under the rule of the common law the accused was not permitted to waive trial by jury, as generally he was not permitted to waive any right which was intended for his protection. Nevertheless, in the Colonies such a waiver and trial by the court without a jury was by no means unknown, as the many references contained in the brief of the Solicitor General conclusively show. But this phase of the matter we do not stop to consider, for the rule of the common law, whether exclusive or subject to exceptions, was justified by conditions which no longer exist; and as the Supreme Court of Nevada well said in Reno Smelting Works v. Stevenson, 20 Nev. 269, 279, 21 P. 317, 320, 4 L. R. A. 60, 19 Am. St. Rep. 364:

" 'It is contrary to the spirit of the common law itself to apply a rule founded on a particular reason to a case where that reason utterly fails,—cessante ratione legis, cessat ipse lex.'

"The maxim seems strikingly apposite to the question here under review. Among other restraints at common law, the accused could not testify in his own behalf; in felonies he was not allowed counsel (IV Sharswood's Blackstone, 355, note 14), the judge in such cases occupying the place of counsel for the prisoner, charged with the responsibility of seeing that the prisoner did not suffer from lack of other counsel (Id.); and conviction of crime worked an attaint and forfeiture of official titles of inheritance, which, as Judge Aldrich points out (quotation supra), constituted in a large sense the reason for withholding from accused parties the right of waiver.

"These conditions have ceased to exist, and with their disappearance justification for the old rule, no longer rests upon a substantial basis. In this respect we fully agree with what was said by the Supreme Court of Wisconsin in Hack v. State, 141 Wis. 346, 351, 352, 124 N. W. 492, 494, 45 L. R. A. (N. S.) 664:

" 'The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent man should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished, if convicted, by the death penalty, or some other grievous punishment out of all proportion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist and well that every technical requirement should be insisted on, when the state demanded its meed of blood. Such a course raised up a sort of a barrier which the court could utilize when a prosecution was successful which ought not to have been successful, or when a man without money, without counsel, without ability to summon witnesses, and not permitted to tell his own story, had been unjustly convicted but yet under the ordinary principles of waiver as applied to civil matters, had waived every defect in the proceedings.

" 'Thanks to the humane policy of the modern criminal law, we have changed all these conditions. The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the state, and may have his witnesses summoned and paid for by the state; not infrequently he is thus furnished counsel more able than the attorney for the state, in short the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights, and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it.'

"The view that power to waive a trial by jury in criminal cases should be denied on grounds of public policy must be rejected as unsound.

"It is not denied that a jury trial may be waived in the case of petty offenses, but the contention is that the rule is otherwise in the case of crimes of the magnitude of the one here under consideration. There are decisions to that effect, and also decisions to the contrary. The conflict is marked and direct. Schick v. United States, supra, is thought to favor the contention. There the prosecution was for a violation of the Oleomargarine Act (24 Stat. 209), punishable by fine only. By agreement in writing a jury was waived and the issue submitted to the court. Judgment was for the United States. This court held that the offense was a petty one, and sustained the waiver. It was said that the word 'crimes' in article 3, § 2, of the Constitution, should be read in the light of the common law, and, so read, it does not include petty offenses; and that neither the constitutional provisions nor any rule of public policy prevented the defendant from waiving a jury trial. The question whether the power of waiver extended to serious offenses was not directly involved, and is not concluded by that decision. * * *

"We are unable to find in the decisions any convincing ground for holding that a waiver is effective in misdemeanor cases, but not effective in the case of felonies. In most of the decisions no real attempt is made to establish a distinction, beyond the assertion that public policy favors the power of waiver in the former, but denies it in the latter because of the more serious consequences in the form of punishment which may ensue. But that suggested differentiation, in the light of what has now been said, seems to us more fanciful than real. The Schick Case, it is true, dealt with a petty offense, but, in view of the conclusions we have already reached and stated, the observations of the court (pages 71, 72 of 195 U. S., 24 S. Ct. 826, 828) have become equally pertinent where a felony is involved:

"'Article six of the amendments, as we have seen, gives the accused a right to a trial by jury. But the same article gives him the further right "to be confronted with the witnesses against him * * * and to have the assistance of counsel." Is it possible that an accused cannot admit, and be bound by the admission, that a witness not present would testify to certain facts? Can it be that if he does not wish the assistance of counsel, and waives it, the trial is invalid? It seems only necessary to ask these questions to answer them. When there is no constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy.'"

It would seem that the reasoning of the court in the Patton Case should apply with equal force to the first of the two questions here presented, and that the provision of the Fifth Amendment requiring an indictment in capital or other infamous cases creates a personal privilege which the defendant may waive.

II. If an indictment by a grand jury is waived, the only other method of accusation is by information. The question remains: Is the United States Attorney authorized to file an information where the offense charged is above the grade of misdemeanor?

██ Criminal procedure in federal courts, in the absence of statute, is in accordance with the common law. Zolene's "Federal Criminal Law and Procedure," vol. I, § 10; United States v. Maxwell, 3 Dill. 275, Fed. Cas. No. 15,750; United States v. Reid, 12 How. 361, 13 L. Ed. 1023; United States v. Baugh (C. C.) 1 F. 784, 788.

Section 555, title 18, USCA, provides for the charging by information of certain offenses which are not infamous. There is no other express statutory authority for the filing of an information by a United States Attorney. Story's Commentaries on the Constitution, vol. II, § 1780; United States v. Maxwell, Fed. Cas. No. 15,750; Weeks v. United States (C. C. A. 2) 216 F. 292, 295, L. R. A. 1915B, 651, Ann. Cas. 1917C, 524; United States v. Shepard, 1 Abb. N. S. 431, Fed. Cas. No. 16,273. His authority is drawn from the common law under which the Attorney-General of England was authorized to file informations in the name of the king. Weeks v. United States, supra; United States v. Shepard, supra; United States v. Thompson, 251 U. S. 407, 40 S. Ct. 289, 64 L. Ed. 333.

In United States v. Shepard, supra, the court said:

"At the time of the revolution and of the adoption of the constitution, it was the practice in the court of king's bench for the king's attorney-general to file informations in the name and behalf of the king, in a class of cases not above the grade of misdemeanors, without any previous showing to the court, but in the discretion of

that officer. This discretion was not, however, exercised, except in cases where the offense tended to disturb or endanger the king's government, or to molest him in the regular discharge of his royal functions, and where delay would be dangerous.

"There was another class of offenses of the same grade, which could be proceeded against by information filed by the master of the crown office—a person appointed as the king's attorney to prosecute in behalf of the public, on complaint made by a subject or by a common informer. This officer could not substitute an information for the indictment of a grand jury, unless upon a showing and leave of court. The practice was to present affidavits of the offense, and move the court for a rule on the accused to show cause, and if the affidavits were not sufficiently answered leave was granted to file a criminal information in cases below the degree of felony. 4 Bl. Comm. 308, 309, 311; 1 Chit. Cr. Law, 845, 846, 849, 856.

"Now what changes have been produced by the constitution or laws of the United States, affecting the practice in form or substance, so far as regards the question at bar? Congress has passed no law on the subject, and the only constitutional provision affecting the question is the fifth amendment, proposed the same year that the original instrument went into operation—1789. It declares:

" 'No person shall be held to answer for a capital or otherwise infamous crime, unless upon a presentment or indictment of a grand jury,' etc.

"Congress by proposing, and the states by ratifying that amendment, left all offenses not capital or infamous to be prosecuted by information or by indictment, as the circumstances of each case should seem to require, and as the common law would sanction. Indeed, this constitutional provision produced no change in the practice or law, except, perhaps, as regards a class of misdemeanors regarded as infamous crimes, and which might, before the amendment, be prosecuted by information. The amendment, however, fixed the matter, beyond the power of congress or the courts to alter the course of proceeding in bringing forward a charge of crime, in the class of cases embraced by the provision.

"We regard the converse of the fifth amendment to be that persons may be held to answer for crimes other than such as are capital or infamous, upon information or indictment, according to the course of the common law. We have examined all the cases referred to by counsel, and find no well considered decision which conflicts with the views we have expressed, and therefore we conclude that, so far as the question rests on the common law, it is the right of the government, by its proper law officer, the district-attorney, to charge offenses against individuals through the forms and mode of informations."

At common law accusations by information were confined to misdemeanors. Bl. Comm., Book IV, p. 310; 31 C. J. 564; United States v. Shepard, supra; Weeks v. United States, supra.

 Since the authority of the United States Attorney to charge by information is derived from the practice at common law, and since the common law did not recognize such accusation where the offense was above the grade of misdemeanor, it follows that the United States Attorney is without authority to charge by information where the offense amounts to a felony.

It is therefore my conclusion that, while the provision of the Fifth Amendment requiring an indictment where the offense is capital or otherwise infamous creates a personal privilege which may be waived, it will take enabling legislation by Congress to authorize an accusation to be made in such a case by information filed by the United States Attorney.

 It follows that no lawful accusation has been filed against the defendant; that the jurisdiction of the court was not properly invoked, and that the sentence is void.

The judgment and sentence will be set aside, the plea will be withdrawn, and the order permitting the filing of the information will be vacated.