In the Matter of Sidney J. CLARK, Respondent Below, Appellant,

v.

The STATE of Delaware, Appellee.

Supreme Court of Delaware.

July 2, 1970.

**60**

James M. Tunnell, Jr. and Paul P. Welsh of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

John G. Mulford and Fletcher Campbell, Deputy Attys. Gen., Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from an order of the Chancellor directing receivers for Sidney J. Clark to comply with a subpoena *duces tecum*, issued by the Attorney General pur-

suant to 29 Del.C. § 2502, seeking to obtain certain books and records which are in the custody of court-appointed receivers to take charge of and settle the business and affairs of Clark. Clark was subsequently disbarred and now stands under indictment for embezzlement.

In response to an order to show cause why the receivers should not be directed to comply with the subpoena, Clark appeared and contested. He objected to the receivers turning over his records to the Attorney General on the ground that to do so would violate his privilege against self-incrimination under the Fifth Amendment to the Federal Constitution.

At the time of the appointment of receivers of his personal property for the benefit of his creditors, Clark voluntarily surrendered custody of the books and papers now sought by the Attorney General. By affidavit, he avers that at the time the records were turned over to the receivers he had no intention of waiving his privilege against self-incrimination as to any of these records. Furthermore, he avers that at the time of the turnover, it never occurred to him that the records might thereafter become available to the Attorney General for use in criminal proceedings against him. He further avers that at no time had he ever considered the possibility that the turning over of custody of the papers to the receivers would have the effect of a waiver of his privilege against self-incrimination.

Initially, we observe that by reason of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, the seizure of books and papers to be used as evidence is subject to the right of the owner to assert under the Fifth Amendment to the Federal Constitution his right against self-incrimination. The seizure of books and papers is now, in all respects, the same as the right to refuse to answer incriminatory questions. By reason of Malloy v. Hogan, 378

U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, the Fifth Amendment is now specifically applicable to State action.

The court below based its decision that the receivers must comply with the subpoena *duces tecum* upon the theory that Clark, by voluntarily turning the records over to the receivers and failing simultaneously to assert his privilege against self-incrimination, forever waived his right to raise the privilege. The Chancellor's ruling was made upon the authority of Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919, and In Re Fuller, 262 U.S. 91, 43 S.Ct. 496, 67 L.Ed. 881.

While the Chancellor's decision was based upon principles of waiver, the two cases relied upon seem not to have been based upon any question of waiver at all, but rather upon the premise that the mere fact of the turning over of records voluntarily into custody of the law makes inapplicable the assertion of the privilege against self-incrimination This seems clear from the language in *Fuller* to the effect that once possession of records has passed from an individual into the hands of receivers or trustees in bankruptcy, the individual thereafter has no constitutional right to prevent the use of the records for any legitimate purpose. It would seem therefore that the reliance by the Chancellor on the doctrine of waiver is not supported by *Johnson* and *Fuller*.

Prior to the decision in *Johnson*, there was authority that an insolvent person could not be compelled to turn over his records to a trustee in bankruptcy or to a receiver over a claim of self-incrimination unless a protective order against the incriminating use of the records was entered. See United States v. Rhodes, 5 Cir., 212 F. 518; In re Harris, 2 Cir., 164 F. 292; In re Hark, 3 Cir., 136 F. 986; In re Hess, 3 Cir., 134 F. 109, and In re Kanter, 2 Cir., 117 F. 356.

In re Harris, supra, was certified by the Second Circuit Court of Appeals to the Supreme Court of the United States. In an opinion appearing at 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732, the certified question was answered in an opinion written by Mr. Justice Holmes who also wrote the opinion in *Johnson*. The question certified concerned the right of a court of bankruptcy to require a bankrupt to deposit his books of account with a receiver when they contained evidence which might tend to incriminate him. In the order entered, a protective clause was included to the effect that if the records produced evidence of an incriminatory nature, the bankrupt would be protected by order of the court. The Supreme Court of the United States approved the order entered.

In the opinion a distinction is made between the right of a trustee to require the production of books and records, title to which vested in him by a particular section of the Bankruptcy Act, and the right of a receiver in bankruptcy to obtain possession on an *ad interim* basis with the right of the bankrupt to a protective order. It would seem therefore, that the decisions in *Johnson* and *Fuller* depend directly upon a vesting section of the Bankruptcy Act. They are therefore of doubtful pertinency to the inquiry at bar.

We are not concerned in this case with receivers appointed for corporations pursuant to 8 Del.C. § 292, organized under the General Corporation Law of Delaware, to whom all title to the assets and other records of the corporation descend by operation of law. We are concerned with receivers appointed pursuant to the general powers of Chancery to take into custody all of the assets of the debtor for the purpose of conserving them for the payment of creditors. As to receivers appointed pursuant to the general powers of the Court of Chancery, it is quite clear that they do not obtain title to the assets or books and records turned over to them. The powers of such receivers, as arms of the Court of Chancery, are limited to the

powers spelled out in the order appointing them, and do not extend beyond that. In this receivership the receivers were appointed to take custody of the estate of Sidney J. Clark to satisfy the claims of his creditors. As such, they are the officers of the Court of Chancery and have no title to the books, records and other assets of which they have taken custody. They have no title to Clark's assets; they are appointed to conserve those assets for the benefit of his creditors. Bishop on Equity, 606; Bishop v. Clark, 17 Howard 322; Thompson v. Phenix Insurance Co., 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408; Quincy, M. & P. P. Co. v. Humphreys, 145 U.S. 82, 12 S.Ct. 787, 36 L.Ed. 632; Pomeroy, Equity Jurisprudence, § 1336 (5th Ed.).

We have, therefore, a situation unlike that of a transfer of assets, books and records from an insolvent to trustees in bankruptcy, as to which the Bankruptcy Act vests title in the trustees to all assets, books and records which come into their possession. On the contrary, we have a situation in which general equity receivers have taken custody pursuant to the direction of a court order of assets, books and records of Sidney J. Clark, a former member of this Bar.

█ The situation before us is entirely different from that of trustees in bankruptcy who obtain records as a result of their appointment, and have absolute title to those records. As to general equity receivers, however, the only claim they have to possession is pursuant to the order of a Court of Chancery. That order does not vest title to the records in them, and they hold them as officers of the Court of Chancery *in custodia legis*. This, it seems to us, means that the receivers do not have absolute disposition of these records, and that the person from whom they took custody has some control remaining concerning the disposition of them.

Accordingly, we think this case comes within the ambit of Blum v. State, 94 Md. 375, 51 A. 26. In that case the defendants were indicted for obtaining money under false pretenses, largely by circulating false statements of account of the condition of their business. The defendants were tried on the indictment and convicted, and appealed to the Court of Appeals of Maryland. On appeal, one of the main arguments made to reverse the conviction was that the defendants had voluntarily turned over to receivers the books and records of their business, and that the State had obtained these records and used them in the prosecution against the defendants. The objection was that the defendants had thus been made to give evidence against themselves in violation of their constitutional privileges.

The Court of Appeals held that by voluntarily turning over their books and records to receivers, the defendants had not waived any of their constitutional privileges, and that they were at liberty to assert those privileges at any time subsequent to the voluntary turning over. As a part of the ultimate holding, the Court of Appeals held that receivers receiving custody of books and records, and having no title to them, could not effectively waive the constitutional guarantees of the owners of the books. See, also, Banning v. Mercantile Securities Co., 242 Ill. 584, 90 N.E. 238.

█ In this appeal we are concerned with books and records in the hands of receivers who hold them on an *ad interim* basis for the protection of the creditors of the owner. We think that the voluntary turnover of such books and records by the owner to a receiver under these circumstances, does not amount to a voluntary waiver of his privilege against self-incrimination and we accordingly think that the decision of the Chancellor was wrong.

The order directing the turnover of the books pursuant to the subpoena *duces tecum* is hereby reversed.