Sterling **KREIDER,** and Linda Kreider, Plaintiffs,

v.

**F. SCHUMACHER & CO.,** a foreign corporation, Defendant and Third Party Plaintiff,

v.

**MAHONEY–TROAST CONSTRUCTION COMPANY,** Third Party Defendant.

Civ. A. No. 91–446–JLL.

United States District Court, D. Delaware.

March 1, 1993.

Clifford B. Hearn, Jr., Wilmington, DE, for plaintiffs.

Beth H. Christman, of Casarino, Christman & Shalk, Wilmington, DE, for defendant and third-party plaintiff.

Daniel L. McKenty, of Swartz, Campbell & Detweiler, Wilmington, DE, for third-party defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. *INTRODUCTION*

Third-party defendant, Mahoney–Troast Construction Company, ("Mahoney–Troast") has moved for summary judgment against defendant and third-party plaintiff, F. Schumacher & Co. ("Schumacher") pursuant to Rule 56(c) of the Federal Rules of Civil Pro-

cedure. (Docket Item ["D.I."] 48.) The underlying action is a negligence suit brought by Sterling Kreider, an employee of Mahoney–Troast, and his wife, Linda Kreider, seeking damages for injuries sustained when Mr. Kreider, during the course of his employment with Mahoney–Troast, fell from a ladder owned by Schumacher. At the time of the accident, Kreider was working for Mahoney–Troast at a building site in Newark, Delaware which was owned by Schumacher; Mahoney–Troast was the Construction Manager of a building project on the site pursuant to a contract with Schumacher and Kreider was Mahoney–Troast's superintendent at that site. (D.I. 48; D.I. 5; D.I. 10.)

Schumacher's action against Mahoney–Troast seeks indemnification for any sums for which it may be found liable to Kreider pursuant to an indemnification clause in the contract between Mahoney–Troast and Schumacher. (D.I. 5.) Mahoney–Troast alleges that the indemnification clause in the contract does not cover the situation at hand. Mahoney–Troast contends that Schumacher is seeking indemnification for Schumacher's own negligence and that under Delaware law the indemnification clause at issue can not be read to indemnify Schumacher for liability arising from its own negligence. (D.I. 48.) Mahoney–Troast also contends that the exclusivity provision of Delaware's Worker's Compensation Law prohibits Schumacher from seeking indemnification from Mahoney–Troast for Mahoney–Troast's negligence. (D.I. 50.)

For the reasons stated below, this Court finds that the exclusivity provision of Delaware's Worker's Compensation Law does not prohibit this claim because this claim is for indemnification based on an express contract. For the reasons stated below, this Court also finds that third-party plaintiff, Schumacher is not seeking indemnification solely for its own negligence. Thus, this Court will deny third-party defendant Mahoney–Troast's motion for summary judgment.

Plaintiffs, Sterling Kreider and Linda Kreider are citizens of the State of Pennsylvania; defendant Schumacher is a New York Corporation. The amount in controversy in

this case is alleged to exceed $50,000.00 exclusive of interest and costs. (D.I. 1.) Accordingly, this Court has jurisdiction over the primary action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and this Court has jurisdiction over the third-party complaint pursuant to 28 U.S.C. § 1367.

## II. FACTS

On April 17, 1990, plaintiff Sterling Kreider was allegedly injured after falling from a ladder while working as a superintendent for Mahoney–Troast at a building site owned by Schumacher. The ladder which allegedly collapsed was also owned by Schumacher. (D.I. 5; D.I. 50) Plaintiff received worker's compensation benefits from Mahoney–Troast as a result of the accident (D.I. 48) and thereafter commenced this suit for damages against Schumacher, alleging negligence in the supplying of a defective ladder. (D.I. 5.) Schumacher answered the complaint, denying negligence and joining Mahoney–Troast as a third-party defendant based on an indemnification clause in a May 3, 1989 contract between Schumacher and Mahoney–Troast (the "contract"). The motion before this Court involves only that third-party complaint.

The indemnification clause at issue in this case reads as follows:

10.1 *Indemnity*

10.1.1 The Construction Manager agrees to indemnify and hold the Owner harmless from all claims for bodily injury and property damage (other than the Work itself and other property insured under Paragraph 10.4) that may arise from the Construction Manager's operations under this Agreement. (D.I. 49 at A–13.)

The first page of the contract identifies the owner as "F. Schumacher & Co." and the Construction Manager as "Mahony–Troast Construction Company" (sic). (D.I. 49 at A–1.)

In moving for summary judgment, Mahoney–Troast contends that the ladder from which Kreider fell was defective and that it was Schumacher's duty in supplying the ladder to supply a ladder free from defects. Thus, Mahoney–Troast argues that it was Schumacher's negligence which caused the harm to Kreider and therefore the indemnification clause, as interpreted under Delaware law, prohibits Schumacher from recovering for its own negligence.

Schumacher, in turn, contends that it was Mahoney–Troast's negligence, and not Schumacher's, which caused the injury to Kreider, and thus Schumacher contends it is not seeking indemnification for its own negligence but for Mahoney–Troast's. Schumacher has offered the deposition testimony of Mahoney–Troast's executive vice-president at the time of the accident, F. Karl Stewart, in support of that allegation. In his deposition Mr. Stewart states that Sterling Kreider had been employed by Mahoney–Troast for approximately 39 to 40 years. Stewart testified that he considered Kreider to be a person who had "a lot of construction experience and knowledge." (D.I. 51 at B–54.) Stewart testified that he, himself, had used the same ladder a few times and that he had also inspected it some time after the accident and discovered a missing bolt. Stewart also testified to Mahoney–Troast's procedures regarding ladders. He stated that ladders, being used in the manner as the ladder at issue, were supposed to be fastened at the top. He stated that it was standard practice to shake a ladder and make sure rails and rungs were not damaged before ascending. He also testified that an unfastened ladder could fall when a person was ascending. (D.I. 51.)

Schumacher contends that since Kreider was the Mahoney–Troast superintendent at the time, any negligence on the part of Kreider is to be imparted to Mahoney–Troast. Thus Schumacher argues Mahoney–Troast may have been negligent in the following ways: 1) in not purchasing its own ladder as the contract permitted; 2) in not inspecting the ladder properly; and 3) in not attaching the ladder to the roof in the customary fashion. Finally, Schumacher also contends that there was internal access to the roof, and that Mahoney–Troast may have been negligent in permitting the ladder to be used as a method of entry to the roof rather than requiring use of the internal access. (D.I. 50.) Mahoney–Troast responds to Schumacher's allegations of negligence by

contending that the exclusivity provision of Delaware's Worker's Compensation Law prohibits a tort cause of action against Mahoney–Troast.

### III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. "In other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment it is the party seeking summary judgment who bears "the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### IV. DISCUSSION

#### A. Choice of Law

■ A Federal District Court sitting in diversity must apply the choice of law rules of the state in which it sits to determine which state's law governs the controversy before it. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Therefore, this Court must apply the State of Delaware's choice of law rules. Delaware courts apply the modern "most significant relationship" test of the *Restatement (Second) of Conflicts* § 188 (1971) to resolve

conflicts issues arising out of the interpretation and validity of contracts. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 41 (Del.1991). Delaware choice of law rules also rely on *Restatement (Second) of Conflicts of Law* § 187 for the proposition that "the parties' choice of law, as expressed in their agreement, will be upheld unless the state whose law would control in the absence of a choice has a materially greater interest in the subject matter." *Rosenmiller v. Bordes*, 607 A.2d 465, 468 (Del.Ch.1991) (citing *Wilmington Trust Co. v. Wilmington Trust Co.*, 24 A.2d 309 (Del.Supr.1942). Thus, "[u]nder Delaware law, express choice of law provisions in contracts are generally given effect." *A.I.C. Ltd. v. Mapco Petroleum Inc.*, 711 F.Supp. 1230, 1237 (D.Del.1989). The contract at issue in this case has an express choice of law provision. Article 12 of the contract states in relevant part: "This Agreement shall be governed by the law in effect at the location of this Project." (D.I. 51 at B 34.) Since the location of the project was Newark, Delaware, the express choice of law provision calls for the application of Delaware law. Since the work which the contract governed took place in Delaware, and since both parties have operated under the assumption that Delaware law controls, this Court presumes that there is no state with a greater interest than Delaware's and thus this Court will uphold the choice of law provision in the contract and apply the Delaware substantive law on issues concerning the interpretation and validity of contracts.

#### B. Delaware Law on Indemnification by Contract

#### I. THE EXCLUSIVITY PROVISION OF DELAWARE'S WORKER'S COMPENSATION LAW DOES NOT PRECLUDE SCHUMACHER'S CLAIM.

■ Mahoney–Troast states in its reply brief that:

[n]o party has asserted a negligence claim against Mahoney–Troast. In fact, the exclusivity provision of Delaware's Worker's Compensation Law precludes a tort cause of action against Mahoney–Troast. (D.I. 52 at 6.)

Schumacher has not, however, instituted a tort cause of action against Mahoney–Troast; such an action would, in fact, be precluded by the exclusivity provision of Delaware's Worker's Compensation Law. Schumacher has instead, instituted a contract cause of action against Mahoney–Troast. The contract at issue provides coverage for "*all claims* for bodily injury and property damage ... that may arise from the Construction Manager's operations under this Agreement." (D.I. 49 at A–13.) (Emphasis added.) Thus, Mahoney–Troast's negligence is relevant not because this is a cause of action for negligence but rather because the contract at issue in this case provides indemnification for all claims including, as discussed *infra*, claims arising from Mahoney–Troast's negligence.

Since Schumacher's action against Mahoney–Troast is based, not in tort, but in contract, that action is not precluded by the exclusivity provision of the Delaware Worker's Compensation Law as Mahoney–Troast has contended. While "[i]t is settled Delaware law that an alleged tortfeasor responding to a claim by an injured employee may not seek contribution from an employer if the employee-plaintiff could not have sued the employer directly because of the exclusivity of the workmen's compensation remedy ..." (citations omitted) it is also settled Delaware law that "third-party actions against employers may be sustained on a contractual, as distinct from a tort, theory of recovery based on express or implied indemnification." *Farrall v. Armstrong Cork Co.*, 457 A.2d 763, 766 (Del.Super.1983) (citing *Diamond State Tel. Co. v. University of Delaware*, 269 A.2d 52 (Del.Supr.1970); 2A Larson, *Workmen's Compensation Law* § 76.40 and 76.50 (1982). The action in this case clearly falls into the latter category. Therefore, even though Mahoney–Troast has paid worker's compensation benefits to Kreider, and it therefore could not be liable to Schumacher for contribution as a joint tort-feasor for any judgment Schumacher might have to pay to the Kreiders, Mahoney–Troast may still be liable to Schumacher for any judgment Schumacher might have to pay to the Kreiders based on the theory of express indemnification as evidenced by the indemnification clause in the May 3, 1989 contract.

The *Diamond State Telephone* case, cited above, involved relationships between the parties which are similar to the relationships in this action. In that case, an employee of the telephone company was killed while working for the telephone company installing a T.V. cable into one of the University buildings. The employee was electrocuted on that job in a manhole owned by the University. The employee's widow collected workmen's compensation from the telephone company and brought suit against the University, alleging negligence in the maintenance of a dangerous condition on its premises. The University, by third-party complaint, brought the telephone company into the action. The third party complaint was based on a theory of implied contract. The University alleged that it had an implied contract with the telephone company in which the telephone company was obligated to do the work in a careful and prudent manner. The University alleged that the telephone company breached this contractual duty to do its work in a careful and prudent manner by failing to notify the University of the time in which it was to commence work, so that the University could de-energize the electrical conduits. The Telephone Company, which had already paid worker's compensation to the widow, moved to dismiss the third-party complaint on the ground that it did not state a claim upon which relief could be granted. In making its motion, the Telephone Company relied on the exclusivity provision of the Delaware Worker's Compensation Law, 19 *Del.C.* § 2304 and the case-law interpreting Delaware's adoption of a section of the Uniform Contribution Among Tort–Feasors Law, 10 *Del.C.* § 6301, which requires that in order to enforce contribution, joint tort-feasors must be liable to the same person asserting the same claim. The *Diamond State* Court held that those two provisions of Delaware law would bar a suit for contribution but would not bar a suit for indemnification.

In allowing the third-party claim against the employer based on a theory of contractual indemnification, Chief Justice Wolcott, writing for the Delaware Supreme Court, summarized the law as follows:

The right to maintain an action of this type by a third party against a negligent employer who has been paying workmen's compensation to his injured employee or his widow, is recognized in 2A Larson, Workmen's Compensation Law § 76.00 (1970). In this section it is pointed out that an employer may be held liable for indemnity if he has breached an independent duty owed a third party, or if in the circumstances there is a basis for finding an implied promise of indemnity. If such is the fact, then the exclusive remedy provision in the Workmen's Compensation Law has no application and will not bar suit by the third party against the employer.

Professor Larson points out that *the right to indemnity is clear when that obligation arises from a separate contractual relation* such as an employer-tenant's express agreement to hold the landlord harmless, a bailee's obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care. *Diamond State Tel.* 269 A.2d 52, 57 (Del Supr. 1970). (Emphasis added.)

The present case involves an express contractual agreement and thus fits squarely within the category of permitted third-party claims against employers described by Professor Larson and adopted by the Delaware Supreme Court. Schumacher's claim is permitted because it is a contractual claim based on an express indemnification clause and thus is not barred by the exclusivity provision of Delaware's Worker's Compensation Law.

## II. SCHUMACHER'S COMPLAINT DOES NOT SEEK INDEMNIFICATION MERELY FOR ITS OWN NEGLIGENCE.

■ Mahoney–Troast also contends that recovery by Schumacher based on the indemnification clause in the May 3, 1989 contract would be prohibited as a matter of law because Schumacher is seeking indemnification for its own negligence. As Mahoney–Troast correctly demonstrates, under Delaware law "the general rule is that a 'contract of indemnity will not be construed to indemnify a person against his own negligence where such intention is not expressed in clear and unequivocal terms.'" *Powell v. Interstate Vendaway, Inc.*, 300 A.2d 241, 243 (Del.Super., 1972).[1] *See also Hartford Fire Insurance Co. v. Pettinaro Construction Co.*, Civ. No. 91–702–SLR, 1993 WL 152076 (D.Del. February 10, 1993).

Mahoney–Troast correctly asserts that the language of the indemnification clause at issue in this case "does not come close to meeting the specific language requirements under Delaware law" in that it does not clearly and unequivocally state an intent to indemnify Schumacher for its own negligence, and thus Mahoney–Troast argues Schumacher's claim must fail as a matter of law. (D.I. 52 at 1.) This Court agrees with Mahoney–Troast's contention that the language of the indemnification clause at issue, cannot under Delaware law, be interpreted as providing indemnification to Schumacher for Schumacher's own negligence. Thus, in so far as Schumacher's third-party complaint against Mahoney–Troast seeks indemnification for Schumacher's own negligence it fails as a matter of law. This Court finds, however, that Schumacher's claim seeks indemnification for more than its own negligence.

■ In its reply brief, Mahoney–Troast labels Schumacher's allegations of Mahoney–Troast's negligence as an attempt "to shift the Court's attention away from the contractual provision at issue, and to create the appearance of factual issues where none exist." (D.I. 52 at 5–6.) Schumacher's discussion of Mahoney–Troast's negligence and the factual issues surrounding that allegation are not an attempt to shift the Court's attention from relevant issues. In discussing Maho-

---

1. Although an "agreement indemnifying one against the results of one's own negligence is valid under Delaware law ... a contract to indemnify one against the consequences of one's own negligence is not favored in law ... [and thus] [s]uch a contract is strictly construed, and where possible will be construed to confer immunity from liability." *Id.* (Citations omitted.) In fact the Delaware Supreme Court has specifically held that "such a contract provision must be crystal clear and unequivocal." *State v. Interstate Amiesite Corporation*, 297 A.2d 41, 44 (Del. Supr.1972.)

ney–Troast's negligence, Schumacher is merely demonstrating that its claim for indemnification is not barred by Delaware law because it seeks indemnification for more than its own negligence, it seeks indemnification for Mahoney–Troast's negligence. The issue of Mahoney–Troast's negligence is relevant because the contract at issue in this case would provide Schumacher with indemnification for negligence on the part of Mahoney–Troast.

Mahoney–Troast has offered no argument, other than the previously discussed and rejected argument concerning the exclusivity provision of Delaware's Worker's Compensation Law, that the indemnification clause in question is not intended to cover Schumacher against Mahoney–Troast's negligence. The contract at issue provides coverage for *"all claims* for bodily injury and property damage ... that may arise from the Construction Manager's operations under this Agreement." (D.I. 49 at A–13.) (Emphasis added.) While Mahoney–Troast has adequately demonstrated that the "all claims" phrase is modified by Delaware case law to exclude from indemnification claims which arise from Schumacher's own negligence, this Court sees no reason, nor has any argument been made, why the contract should not be read as providing indemnification for other claims for bodily injury and property damage, including claims arising from any negligence on the part of Mahoney–Troast. Thus, in so far as Schumacher's complaint seeks indemnification for liability arising from Mahoney–Troast's negligence, it will survive this motion for summary judgment.

This court reaches the following conclusions: 1) in so far as Schumacher seeks contractual indemnification for its own negligence based on the language of the indemnification clause at issue in this case, its claim is precluded as a matter of law; and 2) the indemnification clause at issue does require Mahoney–Troast to indemnify Schumacher for all other claims for bodily injury and property damage that arise from Mahoney–Troast's operations under the contract, including claims which arise from Mahoney–Troast's negligence.

## V. CONCLUSION

For the reasons set forth above, this Court will deny the motion of third-party defendant, Mahoney–Troast, for summary judgment. An order will be entered forthwith in accordance with this opinion.